IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRANDON JALON MAZE,               :
    Petitioner                        :
                                      :     No. 1:22-cv-00456
    v.                                :
                                      :     (Judge Kane)
LONNIE OLIVER, et al.,             :
    Respondents                       :

## MEMORANDUM

Before the Court is a habeas corpus petition filed pursuant to 28 U.S.C. § 2254 through

which pro se Petitioner Brandon Jalon Maze ("Maze") challenges his 2018 convictions for

conspiracy to commit murder and aggravated assault in the Franklin County Court of Common

Pleas ("Court of Common Pleas").  The Court will deny the petition for writ of habeas corpus

with prejudice.

## I.     BACKGROUND

The Court of Common Pleas has succinctly summarized the relevant factual background

of Maze's conviction.  See (Doc. No. 8-6); Commonwealth v. Maze, No. 183 MDA 2019, 2019

WL 5847891, at *2 (Pa. Super. Ct. Nov. 7, 2019).[1]  On April 20, 2016, Maze's codefendant,

Anthony Cobb ("Cobb"), was stabbed during a "melee" in Waynesboro, Pennsylvania.  (Doc.

No. 8-6 at 2.)  Cobb responded by pulling a gun, chasing the individual who stabbed him, and

firing a shot at him.  (Id.)  Cobb subsequently told an associate of his, Joseph King ("King"), that

the stabbing occurred when someone had tried to rob him.  (Id. at 3.)  Cobb instructed King to

look for the people who were responsible for the stabbing and to tell Cobb if he found them.  (Id.

---

[1] The Pennsylvania Superior Court ("Superior Court") attached the Court of Common Pleas'
opinion to its decision affirming the opinion.  This Court will cite the Court of Common Pleas'
opinion using the copy that has been docketed on this Court's electronic docket at Doc. No. 8-6
and the page numbers corresponding to this Court's ECF heading.

at 4.)   King found two individuals later that evening who he believed were responsible for the

stabbing and called Cobb on the phone to tell him about them.  (Id.)

Cobb arrived at King's location a few minutes later in a vehicle driven by another

individual, Ryan Troskoski ("Troskoski").  (Id.)  Cobb was in the front passenger seat of the car

and Maze was in the rear passenger seat.  (Id.)  King entered the vehicle and Cobb handed him a

gun.  (Id.)  King understood from this action that Cobb was instructing him to use the gun to go

after the people who were responsible for the stabbing.  (Id.)  Troskoski drove them to an alley

located close to a nearby Rutter's convenience store, at which point Maze and King exited the

vehicle.  (Id.)

Maze and King observed an individual, later identified as Corey Ballard ("Ballard"), in

the area.  (Id.)  Maze called for Ballard to come over to them and Ballard immediately fled.  (Id.)

Maze chased after him.  (Id. at 4–5.)  Ballard hopped over a fence, at which point King observed

Maze raise his right arm and fire his gun.  (Id. at 5.)  King turned to run away and heard several

more gunshots.  (Id.) King fled the area, but Maze caught up with him a short time later.  (Id.)

They then parted ways after briefly talking to each other.  (Id.)

Shortly after dropping Maze and King off, Cobb and Troskoski drove back past the

Rutter's and pulled off the road.  (Id. at 6.)  As Troskoski was pulling the car over, he heard five

shots.  (Id.)  Cobb directed Troskoski to drive back to where they had dropped Maze and King

off.  (Id.)  Cobb and Troskoski found Maze there.  (Id.)  Maze confirmed that he had fired the

five shots that Troskoski heard and expressed that he was upset that King had not fired his gun.

(Id.)  Shortly after Maze shot at Ballard, police officers spoke with Ballard at the Rutter's.  (Id.)

Ballard was upset and emotional and could hardly explain what had happened.  (Id.)  Subsequent

investigation by police revealed several bullet holes in buildings surrounding the area of the

shooting.  (Id. at 7.)  Police also spoke with a nearby resident, Diane Hamilton ("Hamilton"), who stated that she had heard gunshots and that she had found clothes in her trashcan outside of her home.  (Id.)  DNA testing of the clothes showed the presence of Maze's DNA.  (Id.)

Maze was charged with attempted first-degree murder, unlawful possession of a firearm, and conspiracy to commit first-degree murder.  (Id. at 8–9.)  Maze's charges were joined with charges against Cobb and King.  (Id. at 8.)  Maze filed two motions to sever his case from the others, but his motions were denied.  (Id. at 9–10.)  Maze elected to proceed to trial without the aid of counsel on February 23, 2018.  (Id. at 9.)  King subsequently elected to testify for the Commonwealth against Cobb and Maze, and Cobb and Maze proceeded to a joint jury trial from June 19, 2018 to June 22, 2018.  (Id. at 10.)  The jury found Maze guilty of aggravated assault and conspiracy to commit first-degree murder.  (Id.)  The Court of Common Pleas subsequently granted Maze's motion to appoint counsel for the purpose of sentencing.  (Id.)  Maze was then sentenced, on October 24, 2018, to a term of imprisonment of 210–480 months.  (Id.)  Maze filed a post-sentence motion on November 5, 2018, which the Court of Common Pleas denied on January 2, 2019.  (Id. at 10–11.)

Maze appealed to the Superior Court on January 31, 2019, asserting the following claims for relief: (1) the Court of Common Pleas abused its discretion by denying his motions to sever; (2) the Court of Common Pleas abused its discretion by admitting hearsay statements made by Ballard under the excited utterance rule; (3) the Court of Common Pleas abused its discretion by limiting Maze's questioning about letters written by Cobb; (4) the Court of Common Pleas abused its discretion by not conducting a sufficient colloquy of a juror who appeared to be falling asleep during the trial; (5) there was insufficient evidence to support Maze's conviction; (6) the verdict was against the weight of the evidence; and (7) admission of Ballard's hearsay statements

violated Maze's Sixth Amendment right to confront witnesses against him.  (Id. at 11, 13, 21, 23, 25–26, 33, 36.)  The Court of Common Pleas addressed the claims of error in an opinion filed pursuant to Pennsylvania Rule of Appellate Procedure 1925 on March 14, 2019.  See generally (id.).  The Superior Court affirmed the conviction and sentence on November 7, 2019.  See Maze, 2019 WL 5847891, at *1–2.

Maze filed a petition for state collateral relief pursuant to Pennsylvania's Post-Conviction Relief Act on April 2, 2020.  See Commonwealth v. Maze, 264 A.3d 353, No. 1549 MDA 2020, 2021 WL 4100392, at *1 (Pa. Super. Ct. Sept. 9, 2021).  The Court of Common Pleas dismissed the petition on November 17, 2020.  See id.  Maze appealed to the Superior Court, asserting the following claims for relief: (1) that his post-trial counsel was ineffective for failing to assert in post-trial motions and on direct appeal that his waiver of his right to trial counsel was defective; (2) that PCRA counsel was ineffective by failing to amend his PCRA petition to properly argue post-trial counsel's ineffectiveness; and (3) that the Court of Common Pleas abused its discretion by not granting him leave to amend his PCRA petition.  See id.

Maze's claim that his waiver of trial counsel was defective was based on the court's purported failure to inform Maze of the nature of crimes charged and the possible resulting penalties during the charge conference after the conclusion of trial testimony.  See (Doc. No. 8-11 at 12).  During the relevant portion of the conference, Maze asked whether he could be convicted of the lesser included offense of aggravated assault, which resulted in the following exchange between Maze and the trial judge:

> THE COURT:          You're not charged with aggravated assault.
>
> DEFENDANT MAZE:          I understand that but from my understanding of me studying and everything I felt as though they are lesser charges, and I didn't know if I was acquitted if I could be still charged with lesser charges.

THE COURT:          Here's the way this works.  Mr. Faust and counsel, feel free to jump in if you object to my definition of how the law works.  You are permitted to ask this Court to instruct the jury on lesser included if the evidence supports it, and we would certainly find it would support an aggravated assault charge and recklessly endangering charge, but what you need to understand about that is if you request that I instruct the jury on that, then they have that option to return that verdict, so if you don't request it and the Commonwealth doesn't request it, then the only option they have is attempted murder.  They can't go out and create a lesser included unless I instruct them that they can consider that.  So it's really up to you as a matter of strategy whether you want me to advise the jury that they have the option to consider aggravated assault and reckless endangering.

…

What you need to understand, Mr. Maze, is that if you ask me to instruct the jury on the lesser included and I feel the evidence supports it, I would do that.  You're entitled to but that gives the jury the option to do that then[.]

DEFENDANT MAZE:          I understand.

THE COURT:          If you don't request it and the Commonwealth doesn't request it, then they're stuck with what you're charged with and that's what they have to decide.

DEFENDANT MAZE:          I'm fine with instructing the jury, Your Honor.

THE COURT:          You want the jury instructed on aggravated assault?

DEFENDANT MAZE:          And reckless endangering.  I read that they are lesser charges.

(Doc. No. 8-4 at 113–14.)[2]  Maze argued that this exchange constituted an insufficient colloquy on his waiver of trial counsel because it did not inform him that instructing the jury on the lesser included offense of aggravated assault opened the door to him being given consecutive sentences.  (Doc. No. 8-11 at 14.)

The Superior Court found this argument unavailing.  The court noted that colloquies to determine whether a defendant has knowingly waived his right to counsel are governed by

---

[2]  The Court cites the trial transcript using the page numbers corresponding to this Court's ECF caption.

5

Pennsylvania Rule of Criminal Procedure 121 and that Rule 121 does not provide any rules for conducting charge conferences with a pro se defendant who has previously waived his right to counsel.  See Maze, 2021 WL 4100392, at *3.  The court further noted that the aggravated assault instruction was given to the jury at Maze's request and without any contemporaneous objection by Maze.  See id. at *4.  In previously waiving the right to counsel, the court reasoned, Maze acknowledged "that he could permanently lose the right to challenge any errors to which he did not lodge a timely objection."  See id.  The court reasoned that this sort of "strategic blunder" was a risk the defendant undertook when he exercised his right to self-representation. See id.  "In summary," the court concluded, "[Maze's] first argument relates in substance to [his] strategic mistake made during trial when discussing points for charge, and not to the trial court's handling of the waiver-of-counsel colloquy."  See id.  The court also denied relief with respect to Maze's second and third claims of error by the Court of Common Pleas and accordingly affirmed the dismissal of his PCRA petition.  See id. at *4–5.

Maze filed the instant petition on March 7, 2022, and the court received and docketed it on March 28, 2022.  (Doc. No. 1.)  Maze asserts six claims for habeas corpus relief: (1) that the Court of Common Pleas conducted an insufficient colloquy on Maze's waiver of his right to counsel by failing to advise him of the possible sentencing consequences of requesting a jury instruction on the lesser included offense of aggravated assault; (2) that his post-trial counsel was ineffective for failing to argue that the colloquy was deficient; (3) that his Sixth Amendment right to confront witnesses was violated when letters written by Cobb were admitted into evidence without Cobb testifying in the trial; (4) that his Sixth Amendment right to confront witnesses was violated when his counsel did not assert the confrontation argument on direct appeal; (5) that his Sixth Amendment right to confrontation was violated when the

6

Commonwealth introduced statements made by Ballard under the excited utterance exception to Pennsylvania's hearsay rules rather than calling Ballard as a witness; and (6) that his Fourteenth Amendment right to due process was violated when the Commonwealth used Cobb's letters to prove a conspiracy.  (Id. at 7–22.)

Respondents responded to the petition for writ of habeas corpus on May 23, 2022.  (Doc. No. 8.)  Respondents argue that Maze's petition should be dismissed for failure to exhaust state court remedies and that Maze's first claim should alternatively be denied on its merits to the extent that the Court deems it exhausted.  (Id.)  Maze filed a reply brief on September 6, 2022, making the petition for writ of habeas corpus ripe for judicial review.  (Doc. No. 11.)

## II.    LEGAL STANDARDS

### A.    Substantive Standard

Habeas corpus is an "extraordinary remedy" reserved for defendants who were "grievously wronged" by criminal proceedings.  See Calderon v. Coleman, 525 U.S. 141, 146 (1998).  The exercise of restraint by a federal court in reviewing and granting habeas corpus relief is appropriate due to considerations of comity and federalism.  See Engle v. Isaac, 456 U.S. 107, 128 (1982).  "The States possess primary authority for defining and enforcing the criminal law.  In criminal trials they also hold the initial responsibility for vindicating constitutional rights.  Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law."  Id.  States also have a recognized interest in the finality of convictions that have survived direct review within the state court system.  See Brecht v. Abrahamson, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws

of the United States." <u>See</u> 28 U.S.C. § 2254(a).  If a claim presented in a Section 2254 petition

has been adjudicated on the merits in state court proceedings, the Anti-Terrorism and Effective

Death Penalty of 1996 ("AEDPA") sets stringent limits on a federal court's ability to issue a writ

of habeas corpus.  Specifically, AEDPA states, in relevant part:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim—
>
> > **(1)** resulted in a decision that was contrary to, or involved an unreasonable
> > application of, clearly established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > **(2)** resulted in a decision that was based on an unreasonable determination
> > of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The standard for obtaining habeas corpus relief under AEDPA is "difficult to meet."  <u>See</u>

<u>Mays v. Hines</u>, 592 U.S. 385, 391 (2021) (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 102

(2021)).  Federal habeas corpus relief is meant to guard against "extreme malfunctions in the

state criminal justice systems" and is not meant to substitute for "ordinary error correction

through appeal."  <u>See</u> <u>Harrington</u>, 562 U.S. at 102–03 (citing <u>Jackson v. Virginia</u>, 443 U.S. 307,

332 n.5 (1979) (Stevens, J. concurring in judgment)).  "Federal habeas courts must defer to

reasonable state-court decisions," <u>see</u> <u>Dunn v. Reeves</u>, 594 U.S. 731, 732 (2021), and may only

grant habeas corpus relief when the state court's decision "was so lacking in justification" that its

error was "beyond any possibility for fair minded disagreement," <u>see</u> <u>Mays</u>, 592 U.S. at 391

(quoting <u>Harrington</u>, 562 U.S. at 102).

### B.    Exhaustion and Procedural Default

Absent unusual circumstances, a federal court should not entertain a petition for writ of habeas corpus, unless the petitioner has first satisfied the exhaustion requirement articulated in 28 U.S.C. § 2254(b).  Under Section 2254(c), a petitioner will not be deemed to have exhausted his available state remedies if he had the right under the law to raise, by any available procedure, the question presented.  See O'Sullivan v. Boerckel, 526 U.S. 838 (1999).  A claim is exhausted when it has been "fairly presented" to the state court.  See Picard v. Connor, 404 U.S. 270, 275 (1971).  To that end, the federal habeas claim "must be the substantial equivalent of that presented to the state courts."  See Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997).  The petition must present the claim "in a manner that puts [the respondents] on notice that a federal claim is being asserted."  See Bronshtein v. Horn, 404 F.3d 700, 725 (3d Cir. 2005).  "The Supreme Court has instructed that a claim is not 'fairly presented' if the state court 'must read beyond a petition or brief . . . in order to find material' that indicates the presence of a federal claim."  Collins v. Sec'y of Pa. Dep't of Corrs., 742 F.3d 528, 542 (3d Cir. 2014) (quoting Baldwin v. Reese, 541 U.S. 27, 32 (2004)).  Moreover, a habeas corpus petitioner has the burden of proving the exhaustion of all available state remedies.  See 28 U.S.C. § 2254.  Overall, the exhaustion requirement advances the goals of comity and federalism while reducing "piecemeal litigation."  See Duncan v. Walker, 533 U.S. 167, 180 (2001).  Prisoners seeking to challenge state court rulings issued by the Commonwealth of Pennsylvania may exhaust their claims by presenting them to the Pennsylvania Superior Court and are not required to advance the claims before the Pennsylvania Supreme Court.  See Lambert v. Blackwell, 387 F.3d 210, 233 (3d Cir. 2004).

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is an absence of available State corrective process." McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999).  Claims deemed exhausted because of a state procedural bar are considered procedurally defaulted.  See Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000).  The district court then analyzes the claims under the procedural default doctrine.  See id.  When a claim has not been exhausted in state court and state procedural rules bar the petitioner from any further attempts to exhaust the claim, it is procedurally defaulted.  See Shinn v. Ramirez, 596 U.S. 366, 371 (2022).  The purpose of the procedural default rule is to prevent habeas petitioners from avoiding the exhaustion doctrine by defaulting their claims in state court.  See Coleman v. Thompson, 501 U.S. 722, 732 (1991).  In Cone v. Bell, 556 U.S. 449 (2009), the United States Supreme Court explained:

> It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment.  In the context of federal habeas proceedings, the independent and adequate state ground doctrine is designed to ensure that the State's interest in correcting their own mistakes is respected in all federal habeas cases.  When a petitioner fails to properly raise his federal claims in state court, he deprives the State of an opportunity to address those claims in the first instance and frustrates the State's ability to honor his constitutional rights.  Therefore, consistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief in federal court, we have held that when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review.

See id. at 465 (internal quotations and citations omitted).

However, habeas corpus review is not barred in every instance in which a state court invokes a procedural rule to preclude its review of the federal claims asserted by a state prisoner. A state procedural rule can preclude federal habeas corpus review "only when the state rule is

'independent of the federal question [presented] and adequate to support the judgment.'"  See

Levya v. Williams, 504 F.3d 357, 365 (3d Cir. 2007) (citing Nara v. Frank, 488 F.3d 187, 199

(3d Cir. 2007).  The requirements of independence and adequacy are distinct.  See id.  A rule is

"independent" if it is not dependent on any federal constitutional question, but "[a] state

procedural ground will not bar federal habeas relief if the state law ground is 'so interwoven with

federal law' that it cannot be said to be independent of the merits of a petitioner's federal

claims."  See Johnson v. Pinchak, 392 F.3d 551, 557 (3d Cir. 2004).  A rule is "adequate" if "it

was firmly established, readily ascertainable, and regularly followed at the time of the purported

default."  Levya, 504 F.3d at 366 (quoting Szuchon v. Lehman, 273 F.3d 299, 372 (3d Cir.

2001)).

        A petitioner whose constitutional claims have not been addressed on the merits due to

procedural default can overcome the default, thereby allowing federal court review, if the

petitioner can demonstrate either: (1) "cause" for the default and "actual prejudice" as a result of

the alleged violation of federal law; or (2) that the failure to consider the claims will result in a

"fundamental miscarriage of justice."  See Coleman, 501 U.S. at 750.  In order to show "cause

and prejudice" sufficient to overcome a state court default, a petitioner must demonstrate the

"cause" for his default and "prejudice" attributable thereto.  See Werts v. Vaughn, 228 F.3d 178,

192 (3d Cir. 2000) (citing Harris v. Reed, 489 U.S. 255 (1989)).  "[T]he existence of cause for a

procedural default must ordinarily turn on whether the prisoner can show that some objective

factor external to the defense impeded counsel's efforts to comply with the State's procedural

rule."  Murray v. Carrier, 477 U.S. 478, 488 (1986).  Under the "prejudice prong," a petitioner

has the burden of showing "not merely that the errors at his trial created a possibility of

prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire

trial with error of constitutional dimensions."  See United States v. Frady, 456 U.S. 152, 170 (1982); see also Holland v. Horn, 519 F.3d 107, 112 (3d Cir. 2008).

To show "fundamental miscarriage of justice," a petitioner must establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." See Schlup v. Delo, 513 U.S. 298, 326 (1995).  Demonstrating actual innocence requires a stronger showing than that needed to establish prejudice.  See id.  In Goldblum v. Klem, 510 F.3d 204 (3d Cir. 2007), the Third Circuit explained the applicable two-step inquiry as follows: first, a "court must decide 'whether the petitioner has presented new reliable evidence . . . not presented at trial," and second, if a petitioner "puts forth new evidence not considered by the jury, a court asks 'whether it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'"  See id. at 225 (citing Hummard v. Pinchak, 378 F.3d 333, 340 (3d Cir. 2004)).  If a petitioner can establish cause and prejudice or a fundamental miscarriage of justice, the Court excuses his default and reviews the merits of the claim presented.

Counsel's ineffectiveness in failing to preserve a claim for direct appellate review in state court may constitute cause to excuse a procedural default in some circumstances.  See Edwards v. Carpenter, 529 U.S. 446, 451 (2000).  However, a claim of ineffective assistance in failing to preserve a claim must itself be presented to the state courts and properly exhausted before it may be deemed cause for the procedural default of a petitioner's other federal claims.  See id. at 452–53.  Thus, "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted."  See id. at 453.  A procedurally defaulted ineffective assistance of counsel claim can only be deemed cause for the procedural default of

another claim if the petitioner can satisfy the cause and prejudice standard to excuse the procedural default of the ineffective assistance of counsel claim.  See id.

### C.      Ineffective Assistance of Post-Conviction Counsel as Cause for Procedural Default

In Martinez v. Ryan, the United States Supreme Court recognized that, under certain circumstances, the procedural default of an ineffective assistance of trial counsel claim may be excused where the default was caused, in turn, by ineffective assistance of counsel, or the lack of counsel, in initial post-conviction collateral proceedings.  See Martinez v. Ryan, 566 U.S. 1, 8– 18 (2012).  Specifically, the Supreme Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [state] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

See id. at 17.  For Martinez to apply, Petitioner must show that his ineffective assistance of trial counsel claims have "some merit," and that he had ineffective counsel at the initial-review stage of state collateral proceedings.  See Workman v. Sup't Albion SCI, 915 F.3d 928, 937 (3d Cir. 2019).  To demonstrate that a claim has some merit, a petitioner must "show that some reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  See id. at 938.  This standard is different from the "standard applied on the merits under Strickland v. Washington," see id., because "substantiality is a notably lower standard than the proof of prejudice required by Strickland's second prong."  See Richardson v. Sup't Coal Twp. SCI, 905 F.3d 750, 764 (3d Cir. 2018).

Martinez may only be used to excuse the procedural default of a claim of ineffective assistance of trial counsel.  See Davila v. Davis, 582 U.S. 521, 530 (2017).  Procedurally

defaulted claims of ineffective assistance of direct-appeal counsel may not be excused by PCRA

counsel's ineffective failure to assert the claims on collateral appeal.  See id. at 529.

### D.      Standard for Claims Challenging Waiver of Right to Counsel

The United States Supreme Court has held that the right to counsel protected by the Sixth

Amendment also protects the "correlative right" to choose to proceed without counsel.  See

Faretta v. California, 422 U.S. 806, 814 (1975) (quoting Adams v. United States ex rel. McCann,

317 U.S. 269, 279 (1942)).  A defendant may insist upon representing himself "however

counterproductive that course may be."  See McCoy v. Louisiana, 584 U.S. 414, 421 (2018).

The defendant "must be allowed" to make the choice of whether to proceed pro se, "even if it

works 'ultimately to his own detriment.'"  See United States v. Peppers, 302 F.3d 120, 130 (3d

Cir. 2002) (quoting Faretta, 422 U.S. at 834).   Thus, a criminal defendant "in the exercise of a

free and intelligent choice, and with the considered approval of the court" may choose to "waive

trial by jury."  See Faretta, 422 U.S. at 814 (quoting Adams, 269 U.S. at 275).  A defendant

cannot invalidate a waiver of his right to counsel merely because he subsequently makes an error

at trial that an attorney would not have made.  See United States v. Cantor, 470 F.2d 890, 892

(3d Cir. 1972).  Once the defendant has knowingly and intelligently waived the right to counsel,

he "must accept the consequences of that decision."  See id.

In order for a waiver of the right to counsel to be knowing, a defendant "should be made

aware of the dangers and disadvantages of self-representation."  See id. at 835 (citing Adams,

269 U.S. at 279).  The trial court therefore must conduct "a sufficiently penetrating inquiry to

satisfy itself that the defendant's waiver of counsel is knowing and understanding as well as

voluntary."  See Peppers, 302 F.3d at 130.  "To be valid such waiver must be made with an

apprehension of the nature of the charges, the statutory offenses included within them, the range

of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." Id. (quoting Von Moltke v. Gillies, 332 U.S. 708, 724 (1948)). There is no "formula or script" that a trial court can use to ensure that a defendant's waiver of counsel is knowing and intelligent. See Iowa v. Tovar, 541 U.S. 77, 88 (2004). "The information a defendant must possess in order to make an intelligent election" to waive counsel depends "on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." See id.

**E.      Standard for Ineffective Assistance of Counsel Claims**

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." See id. at 668; see also Williams v. Taylor, 529 U.S. 362, 390–91 (2000). Second, under Strickland, the petitioner must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." See id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in the performance prong and the prejudice prong. See id. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987).

When considering an ineffective assistance of counsel claim, the Court's analysis is "doubly deferential" when a state court has already decided that counsel's performance was adequate.  See Dunn, 594 U.S. at 739.  The Court must apply a high level of deference both to counsel's actions and to the state court's determination that counsel's actions were constitutionally adequate.  See id.; Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (citing Yarborough v. Gentry, 540 U.S. 1, 5–6 (2003)).  The federal court may only grant habeas corpus relief if "every 'fairminded jurist' would agree that every reasonable lawyer would have made a different decision."  See id. at 2411 (emphasis in original) (quoting Harrington, 562 U.S. at 101).

## III.   DISCUSSION

### A.   Exhaustion and Procedural Default

The Court will first consider the issues of exhaustion and procedural default because Respondents contend that all of Maze's claims should be dismissed for failure to exhaust state court remedies.  Maze states that he did not exhaust claims 2–6 in state court, but asserts that his failure to exhaust was due to ineffective assistance of counsel in failing to raise the claims on direct appeal.  (Doc. No. 1 at 8, 12, 14, 20, 23.)

The Court agrees that Maze has failed to exhaust state court remedies with respect to claims 3–6.  It is clear from the state court record that Maze did not assert these claims before the Superior Court in either his direct appeal or his PCRA appeal.  See Maze, 2019 WL 5847891, at *1; See Maze, 2021 WL 4100392, at *1.  It is also clear that Pennsylvania procedural rules bar Maze from asserting the claims in any subsequent proceedings.  Maze's direct appeals have concluded, and any second PCRA petition would be untimely.  PCRA petitions, including second or successive petitions, must be filed within one year of the petitioner's underlying criminal conviction becoming final.  42 Pa.C.S. § 9545(b)(1).  Maze's criminal conviction

became final on December 7, 2019, the last date that he could have filed a petition for allowance

of appeal to the Pennsylvania Supreme Court.  See Pa. R. App. P. 1113(a); Maze, 2019 WL

5847891, at *1.  Accordingly, any second or successive PCRA petition needed to be filed no

later than December 7, 2020.  Claims 3–6 are therefore procedurally defaulted because Maze has

not asserted them in state court and state procedural rules bar him from doing so in any

subsequent proceeding.  See Shinn, 596 U.S. at 371.

Because claims 3–6 are procedurally defaulted, the Court can only consider the merits of

the claims if Maze can establish cause and prejudice or a fundamental miscarriage of justice.

See Coleman, 501 U.S. at 750.  The only argument Maze advances to excuse the procedural

default of claims 3–6 is that his counsel was ineffective in failing to advance the claims on direct

appeal.  (Doc. No. 1 at 8, 12, 14, 20, 23.)  In order for the ineffectiveness of counsel on direct

appeal to be cause for the procedural default of his other claims, however, the ineffectiveness of

counsel must have been raised in a separate claim that was properly exhausted in state court.  See

Edwards, 529 U.S. at 453.  Here, Maze did not assert in state court that his counsel was

ineffective in failing to raise claims 3–6 on direct appeal, see Maze, 2019 WL 5847891, at *1;

Maze, 2021 WL 4100392, at *1, and, as noted above, Pennsylvania procedural rules bar Maze

from asserting the ineffectiveness claim in a subsequent proceeding, see 42 Pa.C.S. § 9545(b)(1).

Maze asserts that the procedural default of his claim of ineffective assistance of appellate

counsel can be excused under Martinez, 566 U.S. at 1, because his PCRA counsel was

ineffective in failing to raise the claim during PCRA proceedings.  (Doc. No. 11 at 10.)  This is

incorrect.  Martinez only applies to claim of ineffective assistance of trial counsel; it does not

allow a petitioner to excuse the procedural default of a claim of ineffective assistance of

17

appellate counsel.[3]  See Davila, 582 U.S. at 529.  Maze has not advanced any other arguments to excuse the procedural default of the ineffective assistance of counsel claim that he seeks to advance as a basis to excuse the procedural default of his other claims.  Accordingly, because his ineffective assistance of counsel claim is itself procedurally defaulted, the asserted ineffective assistance of counsel cannot be deemed cause to excuse the procedural default of his other claims.  See Edwards, 529 U.S. at 453.  The Court will therefore dismiss claims 3–6 of the petition as procedurally defaulted.

The court concludes, however, that Maze has properly exhausted state court remedies with respect to claims 1 and 2.  Maze argued in PCRA proceedings before the Court of Common Pleas and the Superior Court that his post-trial counsel was ineffective for failing to argue in post-trial motions and on direct appeal that the waiver of Maze's right to counsel was defective.  See Maze, 2021 WL 4100392, at *1.  The Court finds that this claim sufficiently placed the state courts on notice that Maze was challenging both the effectiveness of his counsel's representation and the underlying constitutionality of his waiver of the right to counsel.  This is amply illustrated by the fact that the Superior Court analyzed the underlying waiver of the right to counsel claim in analyzing the ineffective assistance of counsel claim.  See id. at *3–4.  Accordingly, Maze has exhausted state court remedies on claims 1 and 2 and the Court's analysis proceeds to the merits of those claims.

---

[3]  Maze additionally argues that his direct appeal counsel "qualifies as trial counsel under Martinez" because he litigated post-trial motions on Maze's behalf before the Court of Common Pleas.  (Doc. No. 11 at 10.)  This does not alter the fact, however, that the underlying procedural default that Maze ultimately seeks to excuse—his failure to assert claims 3–6 before the Superior Court—occurred on direct appeal and not during trial.  This procedural default may not be excused by Martinez and its progeny.  See Davila, 582 U.S. at 529.

B.      Merits

As noted above, the Court's analysis proceeds to the merits only as to claims 1 and 2: (1) that the Court of Common Pleas conducted a deficient colloquy on Maze's waiver of his right to counsel by failing to advise him of the possible sentencing consequences of requesting a jury instruction on the lesser included offense of aggravated assault (claim 1); and (2) that his post-trial counsel was ineffective for failing to argue that the colloquy was deficient (claim 2). Because these claims were denied on their merits in state court, AEDPA requires this Court to grant significant deference to the state court decision.  See 28 U.S.C. § 2254(d); Dunn, 594 U.S. at 732; Mays, 592 U.S. at 391.

The Superior Court found that Maze was not entitled to PCRA relief because he did not establish that the waiver of his right to counsel was defective.  See Maze, 2021 WL 4100392, at *2–4.  The court noted that the substance of Maze's claims did not attack the Court of Common Pleas' colloquy on whether Maze knowingly and intelligently waived the right to counsel, but rather the interaction between Maze and the Court of Common Pleas during the charge conference in which Maze requested a jury instruction on the lesser included offense of aggravated assault.  See id. at *3.  The court acknowledged the fact that Maze's requested jury instruction opened the possibility of a consecutive sentence and that no such possible sentence existed prior to him requesting the instruction, but noted that this was the kind of "strategic blunder" that Maze risked when he waived his right to counsel.  See id. at *3–4.  Thus, the court found no merit to the contention that Maze's waiver of counsel was defective because the substance of Maze's claim was based on a strategic mistake and did not relate to whether his waiver was knowing or intelligent.  See id. at *4.  By extension, the Court found that counsel was not ineffective for failing to raise this issue.  See id.

The Court finds that the Superior Court's conclusion is neither contrary to, nor an unreasonable application of, clearly established federal law.  Maze did not advance any arguments in state court as to how the Court of Common Pleas' waiver-of-counsel colloquy was deficient; rather, his argument focused entirely on the interaction in which Maze requested a jury instruction on aggravated assault during the charge conference, which opened the door to the longer sentence that Maze subsequently received.  See id. at *2–4.  The Court agrees with the Superior Court that this is the kind of "strategic blunder" that Maze risked when he waived counsel.  Simply put, Maze "must accept the consequences" of his decision to waive the right to counsel.  See Cantor, 470 F.2d at 892.  He cannot invalidate his waiver of the right to counsel simply because he made an error at trial that counsel would not have made.  See id. Accordingly, the Court will deny relief with respect to the claim that the Court of Common Pleas conducted an insufficient colloquy on Maze's waiver of his right to counsel by failing to advise him of the possible sentencing consequences of requesting a jury instruction on the lesser included offense of aggravated assault (claim 1).  The Court will likewise deny relief with respect to the claim that Maze's direct appeal counsel was ineffective in failing to challenge the colloquy on direct appeal (claim 2).  Counsel cannot be faulted for failing to raise a claim on direct appeal that lacked merit.  See Parrish v. Fulcomer, 150 F.3d 326, 328 (3d Cir. 1998).

## IV.   CONCLUSION

For the foregoing reasons, the Court will deny Maze's petition for writ of habeas corpus with prejudice.  A certificate of appealability will not issue because no reasonable jurist would disagree with this ruling or conclude that the issues presented are adequate to deserve

encouragement to proceed further.  See Buck v. Davis, 580 U.S. 100, 115 (2017) (citing Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)).  An appropriate Order follows.


s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania